John Robert GRIEVES, a minor, by Marilyn Grieves, his mother and next friend, Plaintiff,

v.

Elmer LEVY, Defendant.

Department of Public Aid, Intervening Petitioner.

No. 61 C 1300.

United States District Court
N. D. Illinois, E. D.

March 5, 1965.

760

Kevin D. Kelly, La Salle, Ill., Sidney Z. Karasik, Chicago, Ill., for plaintiff.

William G. Clark, Atty. Gen., State of Illinois, Chicago, Ill., for defendant and intervening petitioner.

ROBSON, District Judge.

By Private Law 88–359, approved October 13, 1964, Congress authorized the payment to plaintiff of the sum of $2,000 in full settlement of the instant federal tort claims cause against the United States and Elmer Levy for the damages. for personal injuries growing out of an accident on May 2, 1961, in Ottawa, Illinois, which occurred while Elmer Levy was engaged in his duties as a postal employee. The Act further provided that the attorney's fee be not in excess of ten per centum of the recovery.

On January 24, 1964, an order was entered granting leave to the Illinois Department of Public Aid to file an intervening petition. Plaintiff has now moved to strike the intervening petition, which claims a lien against the proceeds by virtue of public aid expended on behalf of plaintiff. The amount of the lien claimed is $867.45.

Plaintiff contends that since the suit is brought here by removal under 28 U.S.C. § 1442(a) there is no authority for the Illinois Public Aid Commission to have intervened herein.

Plaintiff relies heavily on the pertinent decision from this district in Monroe v. Pape, 221 F.Supp. 635 at 649–650 (N.D. Ill. (1963)), where the court said:

"The Illinois Public Aid Commission may not intervene as a matter of right for three reasons. (1) There is no statute of the United States which confers such right upon the petitioner, and the State of Illinois is powerless to create a right to be heard in a Federal Court where that right does not exist under the laws of the United States, especially where the State's claim arises under its own law, where the State is neither an indispensable nor a necessary party, and where there is no diversity of citizenship to support the jurisdictional requirements of the Court. (2) The petitioner will in no way be bound by the judgment in this action. (3) The petitioner will not be adversely affected by the disposition of this case, and even if it were, this Court does not have the required 'custody' of property, nor any property as a result of the judgment in this case which is subject to its control or disposition. * * *

"Nor may petitioner intervene by permission under sub-part (b) of Rule 24. There is no statute of the United States which confers such right on petitioner, nor does petitioner's claim have a question of law ·or fact in common with the main .action. Furthermore, the intervention, if allowed, would most certainly prejudice the adjudication of the rights of the plaintiffs. The motion to intervene would be denied on the basis of this rule alone.

"Even were we to assume that the petitioner might intervene under the rule, the petition nevertheless would have to be dismissed on its merits. The Illinois statute not only denies due process and equal protection of the laws, as applied to the facts of this case, but more, it stands in derogation of the full enforceability of the Federal law and thus would conflict with the supremacy clause of the United States Constitution. Art. VI, Cl. 2.

"Accordingly, petitioner's motion to intervene is denied."

The Attorney General for the Illinois Department of Public Aid states in his brief that there is presently in the custody of the court the fund of $2,000, which statement the court accepts for the purpose of this motion inasmuch as the Act to appropriate the same has been passed, although the court's record does not reflect the actual receipt thereof. He seeks to differentiate the instant cause from that of Monroe v. Pape, supra, ·on the ground that that was a Federal Civil Rights Statute and not a Federal ·Tort Claims Act case as this is. The Attorney General maintains the Illinois statute, similar to the Federal Rules, allows intervention of the Department so that it has a charge upon any judgment given plaintiff, pursuant to Illinois Revised Statutes 1963, Chapter 23, Section .819.

Under Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1937), the federal court is to apply the law of the state, so that to deny the De-partment the right to intervene would deny it a right which the state court grants in protecting a substantive right created by the state legislature.

The Department further points out that the distribution of the instant fund would adversely affect a substantial right in the public interest by depriving the state of its right of recovery of the $867.45. Intervenor also cites 42 U.S.C. § 603(b) (2) (B), as recognizing the State's duty to reimburse itself for funds expended, where possible, from personal injury judgments.

This court, with some reluctance in view of the sum which will accrue to the injured person, determines that the Illinois Department of Public Aid has a standing as an intervenor and is legally entitled to be reimbursed for its lien claim from the amount receivable under the special appropriations act.

Early in the suit, in answer to the government's interrogatories, plaintiff stated that she did "not know what the amounts of the bills were. To the best of my knowledge, bills were given to State Aid."

The Illinois Revised Statutes 1963, Chapter 23, Section 819, while not capable of binding the federal government, does bind a citizen of Illinois who received aid from the state. The Act provides:

"The State Department shall have a charge upon all claims, demands and causes of action for injuries to an applicant for or recipient of assistance for the total amount of assistance provided for the recipient * * * from the time of injury to the date of recovery upon such claim, demand or cause of action. * * * The charge shall attach to any * * * judgment * * * entered and to any money * * * which may be recovered on account of such claim, demand, cause of action * * *."

In Hardwick v. Munsterman, 15 Ill.2d 564 at 566, 155 N.E.2d 638 at 640 (1959), it was held that under this section a sub-

rogation by operation of law arises. The court said:

"By the furnishing of assistance the Illinois Public Aid Commission became subrogated to the right of the plaintiff-recipient in any recovery for his personal injury in the amount of assistance furnished during the period in which the recipient had a cause of action. He is presumed to know of the commission's possible right to subrogation when he accepts benefits under the Public Assistance Code."

The basis for this court's disposition of the Department's right to intervene is the case of United States v. Aetna Casualty & Surety Co., 338 U.S. 366, 70 S.Ct. 207, 94 L.Ed. 171 (1949), wherein it was held that notwithstanding the Federal Statute, 31 U.S.C. § 203, restricting assignments of claims against the United States, an insurance company may bring an action under the Federal Tort Claims Act in its own name against the United States upon a claim to which it has become subrogated by payment to an insured who would have been able to bring such action. It was held that the cited statute did not bar transfers by operation of law. While that decision did not culminate from the same issues as are here presented, much that was said is very pertinent. The court was discussing the anti-assignment act as a means of protecting the government from determination of the rights of many contenders to the same fund. The court said, at 373, 70 S.Ct. at 212:

" * * * And one of the first such exceptions [to the rule against assignments] was to transfers by operation of law. * * * "

The court further said, at 375, 70 S. Ct. at 213:

" * * * [T]he Government may deal with the substituted representative as it would have dealt with the claimant if there had been no substitution. * * * "

" * * * [T]he Court has always stated the flat exception of all transfers by operation of law, as distinguished from voluntary transfers."

The court quotes an Attorney General's opinion, at 377, 70 S.Ct. at 213:

" * * * [T]hat subrogation is a transfer by operation of law of the right to receive payment of the amount due."

It further said, at 380, 70 S.Ct. at 215:

"It cannot therefore be seriously contended that Congress and the executive departments were not cognizant of the exemption of subrogation claims from R.S. § 3477 when the Tort Claims Act was passed. * * *

" * * * Rule 17(a) * * * which [was] specifically made applicable to Tort Claims litigation, provides that 'Every action shall be prosecuted in the name of the real party in interest,' and of course an insurer-subrogee, who has substantive equitable rights, qualifies as such."

The court also said, at 381, 70 S.Ct. at 216:

" * * * No reason appears why such a practice [the 'use' practice] should now be required in cases of partial subrogation, since both insured and insurer 'own' portions of the substantive right and should appear in the litigation in their own names."

Although the Department is not an insurer, it is, under the Illinois law, a subrogee which is entitled to sue in its own name. If it has a right to a direct suit, it would seem it should be accorded the same right and standing on an intervention.

The plaintiff's motion to strike the Intervening Petition of the Illinois Department of Public Aid is therefore denied.