# MAURICE ROBERTSON v. CYNTHIA JOHNSON AND OTHERS.
# KENNETH LeROLD AND ANOTHER, APPELLANTS.

190 N. W. (2d) 486.

August 27, 1971—No. 42703.

*Jardine, Logan & O'Brien* and *Michael J. Healey,* for appellants.

*Loren M. Barta,* for respondent plaintiff.

*Newcome, Wallace & Newcome* and *Thomas W. Newcome,* for respondents Anderson.

Heard before Knutson, C. J., and Nelson, Otis, Peterson, and Kelly, JJ.

OTIS, JUSTICE.

This is an action for personal injuries sustained when plaintiff's vehicle left the highway to avoid another accident, crossed the median of a freeway, and collided with a truck, owned by defendant Minneapolis Star and Tribune Company, and driven by defendant LeRold, coming from the opposite direction. Plaintiff lost a leg in the accident. The jury found his damages to be $218,000. The verdict attributed to plaintiff 10 percent of the negligence, to LeRold, 50 percent of the negligence, and to defendant Cynthia Johnson, who was not a party to this appeal, 40 percent of the negligence.

The only issue is whether as a matter of law the evidence supports a finding that LeRold was guilty of a greater degree of negligence than plaintiff. We hold that he was not and consequently reverse.

Plaintiff, Maurice Robertson, was headed south on Highway No. 35W, about 4 o'clock the afternoon of November 7, 1968, when a car ahead of him, driven by defendant Cynthia Johnson, went out of control on a slippery pavement near the Crystal Lake overpass. Except for turning her wheel to the right, she took no evasive action whatever. She kept sliding and blocked the lane of travel ahead of plaintiff to cause the car behind her, driven by defendant Kenneth Anderson, to collide with her car and one on Anderson's right. In an effort to avoid a collision with Anderson, plaintiff braked his vehicle but continued to slide. Thereupon, he turned to the left to pass the Anderson vehicle and drove onto a 34-foot median strip which separated southbound traffic from northbound traffic. He continued to travel a dis-

tance of some 195 feet south and east across the median into the east lane of northbound traffic and collided with the truck being driven in a northerly direction by LeRold.

Robertson testified that 4 or 5 seconds elapsed between the time he first applied his brakes to avoid Anderson and the time "it was all over." He thereafter estimated that about 5 seconds elapsed from the time he first *saw* LeRold's truck until the accident occurred. He further testified that he was at a complete standstill for about 3 seconds before being struck. According to his version, he was some 250 to 300 feet away from the truck when he crossed the median and first saw LeRold.

Plaintiff argues that the verdict against LeRold is justified by the following testimony. Because LeRold had seen a flurry of snow ahead of him near the Crystal Lake overpass and had observed a car proceeding down the median ahead of plaintiff, he should have known an accident was occurring or in the making. Nevertheless, he did not slacken his speed, which he estimated to be 55 to 60 miles an hour, until he saw Robertson crossing the median into his lane of traffic some 300 feet ahead. Then, although he pumped his brakes, he neglected to turn immediately to the right or left to avoid plaintiff's oncoming car and struck plaintiff at a speed of about 48 miles an hour.

Although plaintiff claims to have been at a standstill, the testimony of the investigating officer and the physical facts conclusively contradict his version of the sequence of events. It is undisputed that plaintiff narrowly missed another newspaper truck ahead of LeRold, that the collision occurred in the east half of the northbound lane, and that plaintiff's car proceeded on 73 feet to the south and east. Had the truck struck plaintiff while he was at a standstill, it would have been physically impossible for plaintiff's car to come to a stop south of the point of impact.

Without attempting to assign degrees of negligence to either party, we hold that as a matter of law LeRold was not guilty of a greater degree of negligence than plaintiff. LeRold was operating a 5-ton truck on a highway which was relatively free from

traffic going in his direction. The only other vehicle in his proximity was the newspaper truck ahead of him some 250 feet. The highway was slippery with snow and slush. LeRold was driving about 55 or 60 miles an hour and had no reason for concern until he saw plaintiff coming across the median into his lane of traffic. At the time when Robertson and LeRold were 250 or 300 feet apart on collision course, plaintiff was traveling about 50 or 55 miles an hour and LeRold 55 or 60 miles an hour, combined speeds of 105 to 115 miles an hour. By any computation, this left the drivers but a few moments to take evasive action. LeRold pumped his brakes, the truck slid, and just before impact he braked hard and swung to the left. There was little else he could do. As plaintiff bore down on him from the left, passing behind the truck in front of him, LeRold could not in split seconds arrive at a judgment which was certain to prevent the collision, either to pull right, left, or remain on course. In such an emergency a driver is not held to the wisdom of hindsight. Obviously he could not make an abrupt maneuver on a slippery highway driving a 5-ton truck, without being propelled off the road into certain disaster.

In reaching this conclusion we find support in a number of jurisdictions. The court of appeals of New York in Breckir v. Lewis, 21 App. Div. (2d) 546, 549, 251 N. Y. S. (2d) 77, 79, held:

"* * * [A] driver in his proper lane is not required to anticipate that a car going in the opposite direction will cross over into that lane * * *. And the failure of a driver not otherwise negligent, who meets such a car, to avert the consequence of such an emergency can seldom be considered negligent * * *.

"* * * It could hardly be negligence, in the minimal time available, to fail to calculate the comparative risks involved and adopt the least dangerous course."

To the same effect are Taylor v. Haygood, 113 Ga. App. 30, 147 S. E. (2d) 48; Forgy v. Schwartz, 262 N. C. 185, 136 S. E. (2d) 668; Whitely v. Lobue, 59 Misc. (2d) 755, 300 N. Y. S. (2d) 907.

The Supreme Court of Wisconsin dealt with a similar emer-

gency concept in Papacosta v. Papacosta, 2 Wis. (2d) 175, 85 N. W. (2d) 790. The court pointed out that the driver of a vehicle faced with an oncoming car about to enter his lane of traffic had no way of knowing whether the car would return to its own lane, remain in the wrong lane, or drive off the highway. In applying the emergency doctrine to a driver faced with this dilemma, the court noted (2 Wis. [2d] 179, 85 N. W. [2d] 792):

"* * * In the time he had for observation and action the selection of effective means would have been pure luck. It is only in retrospect that any one may say his procedure was wrong or any given alternative would have produced better results. Under such circumstances the finding that he was negligent in management and control has no evidence to support it."

By way of summary it is appropriate to suggest that had the position of the vehicles been reversed it is inconceivable that plaintiff would have been denied recovery. We cannot escape the conclusion that the jury was influenced by the severity of plaintiff's injuries. There is no other explanation for holding LeRold five times more negligent than plaintiff. Accordingly the order denying defendant LeRold's motion for judgment n. o. v. is reversed.

Reversed.