Troy LUNDBERG, by Virgil F.
LUNDBERG, his guardian,
Respondent,

v.

JEEP CORPORATION, a subsidiary of
Chrysler Corporation, a Delaware
corporation, et al., Respondents,

James A. Nelson, Respondent,

Minnesota Department of Human
Services, lienholder,
Appellant.

No. C7–98–127.

Court of Appeals of Minnesota.

July 7, 1998.

Michael R. Sieben, Michael R. Strom, Sieben, Polk, LaVerdiere,. Jones & .Hawn, P.A., Hastings, for respondent Troy Lundberg.

Mark S. Olson,· Oppenheimer, Wolff & Donnelly, Minneapolis, for respondents Jeep Corp., et al.

David C. Holman, Eden Prairie, for respondent James Nelson.

Hubert H. Humphrey III, Attorney General, Robert V. Sauer, Assistant Attorney General, St. Paul, for appellant.

Michael A. Bryant, John H. Bradshaw Law Offices, St. Cloud, for amicus curiae Minnesota Trial Lawyers Association.

Considered and decided by· KLAPHAKE, P.J., and LANSING and FORSBERG, JJ.*

## OPINION

LANSING, Judge.

After settling his product liability and negligence action against two third-party defendants, Troy Lundberg moved to eliminate or reduce the state's lien for medical assistance payments on grounds that Minn.Stat. § 256B.042 violates the Equal Protection Clause of the Minnesota Constitution. The district court granted the motion and alternatively provided that the state's lien be reduced for attorneys' fees and costs incurred in securing the settlement. The district court's grounds for declaring Minn.Stat. § 256B.042 unconstitutional are infirm, and we reverse both holdings.

## FACTS

Troy Lundberg sustained multiple injuries in an automobile accident on July 7, 1994,

---

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 2.

most notably a severe head injury that resulted in significant residual physical and cognitive impairments. Lundberg, who was not covered by private health insurance, incurred about $345,000 in medical bills. The State of Minnesota's medical assistance (MA) program paid for his care, providing $123,-679.52 in benefits under rates applicable to services provided to MA recipients.

As required under Minn.Stat. § 256B.042, the Minnesota Department of Human Services (DHS) filed a lien in Dakota County District Court for the cost of medical assistance provided to Lundberg on any and all causes of actions against liable third parties. Lundberg's father was appointed guardian and initiated a product liability and negligence action against defendants Jeep Corporation, its parent Chrysler Corporation, and James Nelson. The retainer agreement provided that attorneys' fees would be one-third of Lundberg's recovery in the suit, which settled for $750,000. Defendant Nelson's insurance company paid $50,000 of the settlement; defendants Jeep Corporation and Chrysler Corporation paid the remaining amount under a confidential settlement agreement. The settlement did not fully compensate Lundberg.

After reaching this mediated settlement, Lundberg moved to have the DHS lien eliminated or reduced based on his assertion that the lien statute violated the equal protection guarantees of the Minnesota Constitution. The district court held Minn.Stat. § 256B.042 unconstitutional and granted Lundberg's motion to eliminate the DHS lien. The district court alternatively ordered that the DHS lien be reduced as a contribution to the attorneys' fees and costs Lundberg incurred in securing his settlement. DHS appeals the district court's judgment.

## ISSUES

I. Does the Minnesota Constitution's Equal Protection Clause prohibit the legislature from enacting different subrogation provisions for an injured Minnesotan covered by Medical Assistance and one who is covered by private health insurance?

II. Do the provisions of Minn.Stat. § 256B.042 violate equal protection by providing that a Medical Assistance lien be deducted from a recipient's net recovery (full amount minus attorneys' fees and costs), not to exceed two-thirds of the net recovery?

## ANALYSIS

Minnesota statutes are presumed constitutional, and the power to declare a statute unconstitutional must be exercised "only when absolutely necessary and then only with great caution." *Snyder v. City of Minneapolis,* 441 N.W.2d 781, 788 (Minn. 1989). To challenge successfully the constitutional validity of a statute, the challenger bears a very heavy burden of demonstrating that the presumptively valid statute is unconstitutional. *Head v. Special Sch. Dist. No. 1,* 288 Minn. 496, 506, 182 N.W.2d 887, 894 (1970); *see also* Minn.Stat. § 645.17(3) (1996) (courts required to presume legislature did not intend to violate Minnesota or United States Constitution). Statutory construction is a question of law, fully reviewable under a de novo standard when applied to undisputed facts. *Watson v. United Services Auto. Ass'n,* 566 N.W.2d 683, 688 (Minn.1997).

### I

Under 42 U.S.C. § 1396k, the federal statute governing social security and medical assistance programs, a state medical assistance plan must require participants to assign their rights to medical care payments from third parties, thereby reimbursing the state for Medicaid payments made on their behalf. 42 U.S.C. § 1396k (1996) (mandating state to require assignment of third-party liability as condition for medical assistance eligibility). In addition, Section 1396a requires states to collect from third parties who are legally liable for such payments whatever amounts were previously paid in MA. 42 U.S.C. § 1396a(a)(25)(H) (1996).

Minn.Stat. § 256B.042 complies with the federal requirements by giving DHS a lien for the cost of care against "any and all causes of action" that accrue to the MA recipient. Minn.Stat. § 256B.042, subd. 1 (Supp.1997). MA recipients must notify the state or local agency of any cause of action against a third party when such claim arises.

Minn.Stat. § 256B.042, subd. 4(a) (Supp. 1997). The statute also imposes notification requirements on individuals providing medical care services to MA recipients and to any person who is a party to a claim that may be subject to an MA lien. *Id.*

In a previous opinion, this court found Minn.Stat. § 256B.042 did not violate the Equal Protection Clause. *State Dept. of Human Services v. Bengston*, 506 N.W.2d 38, 40 (Minn.App.1993), *review denied* (Minn. Nov. 16, 1993). *Bengston* was based on *Hershey v. Physicians Health Plan*, 498 N.W.2d 519 (Minn.App.1993), which held that private insurers may enforce contractual subrogation rights prior to full recovery by the insured. *See id.* at 520.

In 1995, two years after these decisions, the state legislature enacted Minn.Stat. § 62A.095, which provides that health plans may not exercise subrogation rights until the insured person has made a full recovery from another source:

Subd. 2. Subrogation clause; limits. No health plan described in subdivision 1 shall contain a subrogation, reimbursement, or similar clause that provides subrogation, reimbursement, or similar rights to the health carrier issuing the health plan, unless:

(1) the clause provides that it applies only after the covered person has received a full recovery from another source; and

(2) the clause provides that the health carrier's subrogation right is subject to subtraction for actual monies paid to account for the pro rata share of the covered person's costs, disbursements, and reasonable attorney fees, and other expenses incurred in obtaining the recovery from another source unless the health carrier is separately represented by an attorney.

Minn.Stat. § 62A.095, subd. 2 (1996). Troy Lundberg maintains that the 1995 subrogation legislation results in disparate treatment of injured citizens covered by private health insurance and injured citizens receiving medical assistance and that this disparity violates Minnesota's constitutional guarantee of equal protection.

■ Equal protection is an inherent but unenumerated right found and confirmed in Minnesota's state constitution. *State v. Russell*, 477 N.W.2d 886, 893 (Minn.1991) (Simonett, J., concurring) (citing Minn. Const. art. 1, §§ 16 and 2). One of the inherent rights provided under article 1, section 2, is the "inherent right to 'equal and impartial laws which govern the whole community and each member thereof.'" *Id.* (quoting *Thiede v. Town of Scandia Valley*, 217 Minn. 218, 225, 14 N.W.2d 400, 405 (1944)). In other words, the equal protection clause requires that individuals who are similarly situated be treated alike unless there is a sufficient basis for distinguishing among them. *Id.* (citing *Bernthal v. City of St. Paul*, 376 N.W.2d 422 (Minn.1985)). When no fundamental right or suspect class is involved, a statute is presumed constitutional, and the challenging party has the burden of proving its invalidity. *Essling v. Markman*, 335 N.W.2d 237, 239 (Minn.1983). The reviewing court cannot substitute its judgment for that of the legislature. *Id.*

■ Thus, in challenging the MA lien statute, Lundberg must show (1) the persons involved are similarly situated; and (2) there is no rational basis for the statute that creates the disparate treatment. The district court determined that all persons whose injury gives rise to third-party liability are similarly situated and thus enforcement of the MA lien provision is prohibited by the Minnesota Constitution's equal protection provisions. DHS contends that MA recipients and individuals covered by private health insurance are *not* similarly situated, even when they are part of a larger class of injured parties pursuing third party liability claims.

Minnesota's medical assistance program is a public program for the welfare of its citizens. By definition, "medical assistance" means "payment of part or all the cost of the care and services identified in section 256B.0625 for eligible individuals whose income and resources are insufficient to meet all of this cost." Minn.Stat. § 256B.02, subd. 8 (1996). Minnesota's MA program pays the cost of all services provided to recipients, without any required premium payments, de-

ductibles, or other contributions. Private health insurance, on the other hand, is a risk-sharing arrangement in which covered individuals pay regular premiums in return for specified coverage.

Although the district court correctly notes that as a result of Minnesota's MA lien statute, personal injury litigants who receive medical assistance do not receive the benefit of the subrogation provision that applies to individuals covered by private health insurance, the court's analysis ignores the critical distinctions between these two benefit programs. The separate and distinct sources of funds for the medical assistance program and private health insurance prevent a determination that individuals who receive MA benefits are similarly situated to individuals covered by private health insurance. Because the groups are not similarly situated, it is not unconstitutional for the state to impose different subrogation requirements on each group. Thus, the enactment of Minn.Stat. § 62A.095 does not affect the constitutionality of the medical assistance lien provisions enacted in Minn.Stat. § 256B.042.

Because this issue is dispositive, it is not necessary to analyze the second prong of the equal protection requirement that a legally sufficient basis, measured by Minnesota's rational basis test, support the distinction.

## II

The MA lien statute sets forth the following formula for distributing proceeds from successful third-party claims upon which the state has perfected a lien:

Upon any judgment, award, or settlement of a cause of action, or any part of it, upon which the state agency has filed its lien, including compensation for liquidated, unliquidated, or other damages, reasonable costs of collection, including attorney fees, must be deducted first. The full amount of medical assistance paid to or on behalf of the person as a result of the injury must be deducted next, and paid to the state agency. The rest must be paid to the medical assistance recipient or other plaintiff. The plaintiff, however, must receive at least one-third of the net recovery after attorney fees and other collection costs.

Minn.Stat. § 256B.042, subd. 5 (1996). Under this formula, attorneys' fees and reasonable costs of collection are first deducted from the MA recipient's recovery, and, although this formula may in some cases reduce the amount available to pay the MA lien, the state is not required to bear responsibility for the fees and costs in recovering its payment. Minn.Stat. § 62A.095, on the other hand, provides that a health carrier's subrogation rights are reduced by the pro rata share of the covered person's costs, disbursements, reasonable attorneys' fees, and other expenses, unless the health carrier was separately represented by an attorney. Subdivision 2 provides in pertinent part:

[T]he health carrier's subrogation right is subject to subtraction for actual monies paid to account for the pro rata share of the covered person's costs, disbursements, and reasonable attorney fees, and other expenses incurred in obtaining the recovery from another source * * *.

Minn.Stat. § 62A.095, subd. 2.

In an alternative holding, the district court provided that should this court determine the MA lien statute to be constitutional, the DHS's MA lien must be reduced. The court concluded that the state should contribute an amount equal to one-third of the lien amount toward the attorneys' fees Lundberg incurred, thereby reducing the lien from $123,-679.52 to $83,220 less one-sixth of Lundberg's costs. The court reasoned that "it would be a violation of the equal protection right to maintain the literal interpretation of Minn.Stat. § 62A.095, subd. 2(2) and at the same time interpret Minn.Stat. § 256B.042 without a similar provision."

The district court's reduction of the lien is based on the same equal protection analysis used to declare the lien statute unconstitutional. Because injured parties who receive Medical Assistance are not similarly situated to injured parties covered by private health insurance, the court may not ignore the plain language of the lien statute and reconstruct a variant formula to deduct attorneys' fees. The district court's ruling is not alternative to a finding of unconstitutionality, but depends on it. Because Minn.Stat. § 256B.042 is constitutional, its plain language applies.

*See* Minn.Stat. § 645.16 (1996) (courts must give effect to statute's plain language).

Minn.Stat. § 256B.042, subd. 5, provides that the state's lien be deducted from the net recovery (full amount less fees and costs) and paid in full to DHS. Minn.Stat. § 256B.042, subd. 5 (1996). The statute provides for only two limits on the requirement that the state's lien be paid in full. Neither limit applies in this case. Because fees and costs are deducted first, the MA recipient would not have to pay the full amount of the lien if the net recovery does not equal the amount of the lien. In addition, the statute expressly requires that the MA recipient must receive at least one-third of the net recovery. The total settlement was $750,000, the net recovery was $449,546.21, and the MA lien was $123,-679.52. Once the state's lien is paid in full, Lundberg will receive $325,866.69, which is more than two-thirds of the net recovery.

Unless the legislature amends Minn.Stat. § 256B.042 to allow MA recipients to reduce lien amounts by attorneys' fees and other costs, the court must follow the statute's clear mandates. *See Dixon v. Johnson,* 430 N.W.2d 253, 255–56 (Minn.App.1988) ("Minnesota Department of Human Services' lien should be reimbursed in full without a pro rata reduction for attorney fees").

Amicus Minnesota Trial Lawyers Association proposes two additional reasons for invalidating the MA lien statute: (1) that because MA recipients assign their rights to pursue recovery from liable third parties, the MA recipient retains nothing against which the state may apply its lien; and (2) the MA lien statute violates a provision of federal law that prohibits, except in certain circumstances, imposition of medical assistance liens prior to death. DHS correctly points out that these issues were not raised or considered in the district court. Consequently, the issues may not be reviewed on appeal. *Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn. 1988) (appellate review is limited to those issues which the record establishes were raised in and decided by the trial court).

**Reversed.**